# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA MAE HUGGLER, | : | CIVIL NO: 1:20-CV-02322 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJIKAZI,[1] | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

## I.   Introduction.

This is a social security action brought under 42 U.S.C. § 405(g).  Plaintiff

Linda Mae Huggler ("Huggler") seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her claim for a period

of disability and disability insurance benefits under Title II of the Social Security

Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is
automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)
(providing that when a public officer sued in his or her official capacity ceases to
hold office while the action is pending, "[t]he officer's successor is automatically
substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance
with this subsection shall survive notwithstanding any change in the person
occupying the office of Commissioner of Social Security or any vacancy in such
office.").

reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   Background and Procedural History.

We refer to the administrative transcript provided by the Commissioner. *See docs. 15-1* to *15-12*.[2]  On March 16, 2018, Huggler filed an application for Social Security disability benefits, alleging disability beginning October 20, 2012. *Admin Tr.* at 12.  Huggler's claim was initially denied on August 23, 2018. *Id.*  Huggler filed a written request for a hearing on September 26, 2018. *Id.*  The Administrative Law Judge Stanley Chin ("ALJ") dismissed the request for a hearing in part for the time period from October 20, 2012 to July 23, 2015, and found that adjudication for the claimant's disability began on July 24, 2015. *Id.* The hearing covering that timeframe was held on November 12, 2019; the same ALJ presided over the hearing from Baltimore, Maryland, while Huggler appeared via video from Endicott, New York. *Id.*

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Huggler's claims.

On December 31, 2019, the ALJ determined that Huggler had not been disabled within the meaning of the Social Security Act from the alleged onset date of October 20, 2012, through September 30, 2019, the date last insured. *Id.* at 23. Benefits were denied accordingly. *Id.* Huggler appealed the ALJ's decision to the Appeals Council, which denied her request for review on October 13, 2020. *Id.* at 1. This makes the ALJ's December 31, 2019 decision the final decision of the Commissioner, and subject to judicial review by this court.

Huggler initiated this action on December 11, 2020, by filing a complaint claiming that "the conclusions and findings of fact of the defendant are not supported by substantial evidence and are contrary to law and regulation." *Doc. 1.* at ¶ 7. Huggler requests that the court find her entitled to disability benefits under the Social Security Act, remand the case for a further hearing, award attorneys' fees on the grounds that the Commissioner's actions in this case were not substantially justified, or order such other and further relief the Court deems just and proper. *Doc. 1* at ¶ 13(a)–(c). The Commissioner filed an answer and a certified transcript of the administrative proceedings that occurred before the Social Security Administration. *Docs. 15, 16.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 12.* The parties have filed briefs, and this matter is ripe for decision. *See docs. 15, 17, 18, 19.*

### III.   Legal Standards.

### A. Substantial Evidence Review—The Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, "the court has plenary review of all legal issues decided by

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

But the court's review of the Commissioner's factual findings is limited to whether

substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.

Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary

sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence

"means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of

New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more

than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*,

48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial

evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict

created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Huggler is disabled, but whether substantial evidence supports the ALJ's and Commissioner's findings that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,

6

who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.    The ALJ's Decision Denying Huggler's Claim.

On December 31, 2019, the ALJ determined that Huggler was not disabled

under §§ 216(i) and 223(d) of the Social Security Act through her last date insured

and denied her claim for benefits. *Admin Tr.* at 23.  Before beginning the five-step

analysis, the ALJ found that Huggler last met the insured status requirements of the Social Security Act on September 30, 2019. *Id.* at 14–15.  At step one of the sequential-evaluation process, the ALJ found that Huggler had not engaged in substantial gainful activity while insured. *Id*. at 15.  After the dismissal of Huggler's proposed onset date of October 12, 2012, the ALJ's adjudication covered from July 24, 2015, the new alleged onset date, through September 30, 2019. *Id*.  At step two of the sequential-evaluation process, the ALJ found that Huggler had the following severe impairments: degenerative disc disease, scoliosis, gastroesophageal reflux disease ("GERD"), peptic ulcer, hypertension, obesity, and anxiety. *Id.* at 15–16.  At step three of the sequential-evaluation process, the ALJ found that Huggler did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 16.

The ALJ then determined that Huggler had the RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).[3] *Id.* at 18.  The ALJ

_____

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

further found that Huggler could stand, sit, and walk for six hours out of the eight-hour workday. *Id.*  The ALJ found Huggler could "occasionally climb ladders, ropes, scaffolds, ramps, and stairs," and could "occasionally stoop and crawl." *Id.*  Huggler could also "frequently balance, kneel, and crouch." *Id.*  The ALJ found that Huggler was "limited to frequent exposure to extreme cold and heat," and she was limited to "frequent use of moving machinery and frequent exposure to unprotected heights." *Id.*  Finally, she was limited to "occasional interaction with the public, coworkers, and supervisors." *Id.*  In making this RFC assessment, the ALJ considered all of Huggler's symptoms that reasonably could be accepted as consistent with the evidence of record and medical opinions. *Id.*

Next, the ALJ determined that Huggler was not capable of performing past relevant work as "a waitress, . . . a cashier 2, . . . a home attendant," and an "order clerk." *Id.* at 21.  The ALJ found that these positions required the performance of work-related activities precluded by Huggler's RFC. *Id.*  In making this determination, the ALJ relied on the testimony of the vocational expert and the other evidence of record. *See id*. at 21–22.  Further, the ALJ concluded that Huggler was a "younger individual age 45–49, on the last date insured," but "subsequently changed age category to closely approaching advanced age." *Id.* at

_____

factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

22.  The ALJ found that Huggler had "at least a high school education" and was "able to communicate in English." *Id.*  Transferability of job skills was not material to the ALJ's determination of whether or not Huggler was disabled because "using the Medical-Vocational rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id.*

Finally, the ALJ determined that after considering "the claimant's age, education, work experience, and residual functional capacity," there were jobs that existed in significant numbers in the national economy she was capable of performing. *Id.* at 745–46.  The vocational expert testified that a hypothetical individual with Huggler's age, education, work experience, and RFC would have been capable of performing the requirements of representative occupations such as:

> 1. Marker (DOT 209.587-034), which is light, unskilled work with a Specific Vocational Preparation (SVP) of 2, of which there are about 339,000 jobs nationally that she could perform;
> 2. Checker I (DOT 222.687-010), which is light, unskilled work with a SVP of 2, of which there are about 31,000 jobs nationally that she could perform; and
> 3. Router (DOT 222.587-038), which is light, unskilled work with a SVP of 2, of which there are about 3,000 jobs nationally that she could perform.

*Id.* at 22–23.  The ALJ found that the expert's testimony was "consistent with the information contained in the Directory of Occupational Titles." *Id.*  In sum, the

ALJ concluded that Huggler was not disabled at any time from October 20, 2012,

through the last date insured. *Id*.  Thus, the ALJ denied benefits. *Id*.


## V.    Discussion.

In her complaint, Huggler asserts that "the conclusions and findings of fact

of the defendant are not supported by substantial evidence and are contrary to law

and regulation." *See doc. 1* at 1.  In her plaintiff's brief, Huggler elaborates on her

complaint, arguing that the ALJ "failed to consider the medical opinion of

plaintiff's treating provider, Physician's Assistant Debra Carr." *See doc. 17* at 6.

Because Huggler's claims concern the ALJ's handling of opinion evidence,

we start with a brief overview of the regulations regarding opinion evidence.  The

regulations in this regard are different for claims filed before March 27, 2017, on

the one hand, and for claims, like Huggler's, filed on or after March 27, 2017, on

the other hand.  Specifically, the regulations applicable to claims filed on or after

March 27, 2017, ("the new regulations") changed the way the Commissioner

considers medical opinion evidence and eliminated the provision in the regulations

applicable to claims filed before March 27, 2017, ("the old regulations") that

granted special deference to opinions of treating physicians.  Here, Huggler filed

her initial claim on March 16, 2018, and so the new regulations govern in this case. *See Admin. Tr.* at 12.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of

12

factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations

provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

## A. The ALJ's determination of Huggler's RFC was not supported by substantial evidence.

Huggler alleges that the ALJ's decision "is not supported by substantial evidence and is the product of legal error." *Doc. 17* at 9.  More specifically, Huggler asserts a single argument that the ALJ failed to consider the medical opinion of the treating Physician's Assistant ("PA"), Debra Carr. *Id.* at 6.  Huggler contends that the opinions of Carr are inconsistent with the ALJ's RFC determination, and thus the ALJ erred at step four of the sequential evaluation process by not supporting his decision with substantial evidence as well as by legal error. *Id.* at 8; *see also doc. 19* at 1.

### 1.  The ALJ failed to consider the medical opinion of PA Carr.

By way of background, Huggler was treated for her various conditions in numerous locations by a number of treating physicians and nurses from 2012 to the date of the ALJ's decision. *See Admin. Tr.* at 12–23.  Notably, the ALJ did not consider in this case the period from October 12, 2012, to July 23, 2015, in his disability determination, as this period had already been dismissed from the claim previously by the same ALJ. *See id.* at 12–13.  Because of the dismissal, that period was not considered for purposes of the ALJ's decision because of the

doctrine of *res judicata*. *Id.* at 12.  What remained was the period from July 24, 2015, to September 30, 2019, the last date insured.

Huggler asserts that the ALJ failed to consider or discuss the medical opinions of Debra Carr, identified as the treating medical PA. *Doc. 17* at 6. Huggler submitted what was alleged to be Carr's medical opinion to the ALJ before the administrative hearing. *Admin. Tr.* at 322.  The alleged medical opinion derives from a visit by Huggler to the Galeton Health Center, operated by UPMC in Galeton, Pennsylvania, where Carr served as a PA. *See id.*  The documents Huggler alleges are Carr's medical opinions consist of two impairment questionnaires, filled out by Carr on June 18, 2019. *See Admin Tr.* at 318–324. One document appears to be a mental impairment questionnaire, and the other a physical impairment questionnaire. *Id.*  The mental impairment questionnaire is not disputed, only the physical impairment questionnaire. *See doc. 17* at 6–7.

In Carr's report, Carr recommended that Huggler could only stand or walk for 1–2 hours of an eight-hour workday. *Id.* at 7; *Admin. Tr.* at 323.  Further, Carr opined that Huggler should walk around some for circulation improvement. *Admin. Tr.* at 323.  Carr also stated that Huggler could only lift up to 5 pounds occasionally and should never lift anything greater than 5 pounds due to her scoliosis. *Id.*  Finally, Carr believed that Huggler's impairments would cause her to

16

be off task for 10 to 15 percent of the time and require her to be absent from work two days a month. *Id.*

Huggler asserts that these recommendations from Carr's opinion are inconsistent with the ALJ's RFC finding. *See doc. 17* at 7.  Huggler supported this proposition by referencing a program policy statement from the Social Security Administration,[4] and asserting that "[L]ight work requires, among other things, an ability to stand and/or walk up to 6 hours per day, lift no more than 20 pounds at a time, and frequently lift or carry objects weighing up to 10 pounds." *See id.*  Carr's opinion recommends standing for no more than 2 hours, and never to lift more than 5 pounds. *See Admin. Tr.* at 323.  Notably, the CFR provides that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b).  The characterization of Huggler's capacity of only standing for 1–2 hours and never lifting more than 5 pounds is inconsistent with the description of "light work" in the CFR.  Thus, we find that the ALJ's RFC determination is inconsistent with Carr's opinion, as a matter of law.  The question then turns on how the ALJ handled this inconsistent opinion.

---

[4] Titles II & XVI: Determining Capability to Do Other Work—the Medical-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), at *5.

Under the new regulations, "[A] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). The question then turns on whether a PA is an "acceptable medical source," and "under the old regulations, a physician assistant's opinion would never be entitled to controlling weight, as a physician assistant was not considered an 'acceptable medical source.'" *Martinez v. Kijakazi*, 2022 WL 1062984, at *6 n.8 (M.D. Pa. Apr. 8, 2022). However, under the new regulations, an "[A]cceptable medical source means a medical source who is a: . . . (8) Licensed Physician Assistant for impairments within his or her licensed scope of practice (only with respect to claims filed (see § 416.325) on or after March 27, 2017)." 20 C.F.R. § 416.902(a)(8); *see also Martinez*, 2022 WL 1062984, at *6 n.8. And as stated above, since the new regulations apply here, a PA is an acceptable medical source, and the question is not one of weight allotted to an opinion but one of consistency and supportability.

Per the CFR, the ALJ "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b). As mentioned above, the ALJ must discuss the factors of consistency and supportability of a given acceptable medical source's opinions. Further, "an ALJ is obligated to

18

consider and explain all pertinent, relevant, and probative evidence." *Wolfe v. Comm'r of Soc. Sec.*, 2013 WL 5328343, at *10 (D.N.J. Sept. 20, 2013) (quoting *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir.2008)).  This requirement is "particularly acute" if the evidence or opinion conflicts with other probative evidence in the record. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981).

        In certain circumstances, an ALJ may overlook medical evidence because it is neither pertinent, relevant, nor probative. *Johnson*, 529 F.3d at 204.  In such cases, remand is not required where an ALJ's decision not to consider medical evidence had no affect on the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005).  Further, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706.  These circumstances, however, are not present here.

        As mentioned above, we have found that Carr's acceptable medical opinion was inconsistent with the RFC determination.  In the instant matter, however, discussion of Carr's opinion was omitted from the ALJ's decision entirely, with no explanation given as to why the opinion was omitted.  We cannot say for certain whether an examination of Carr's opinion by the ALJ would not have affected the ALJ's findings; the ALJ's decision left us nothing to review to determine whether

the "reasons for rejection were improper."  Thus, we find that this is reversible error.

**B. Huggler's case should be remanded.**

The question then is whether we should remand the case to the Commissioner for further proceedings or we should award benefits to Huggler, as she requests. *See doc. 1* at 2 (requesting that benefits be awarded).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a

whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Huggler's claim, and we cannot say that substantial evidence on the record as a whole indicates that Huggler is disabled and entitled to benefits.  Rather, the ALJ's error here was failing to adequately explain his reasoning, indeed failing to examine a medical opinion at all, which may be remedied on remand.  Thus, we will remand the case to the Commissioner for further proceedings.

**VI.    Conclusion.**

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

*<u>S/Susan E. Schwab</u>*
Susan E. Schwab
United States Magistrate Judge